134 F.3d 376
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ARCTIC ICE CREAM NOVELTIES, L.P., A Washington Limited
Partnership; William L. Dinsmore, an Individual,
Plaintiffs-Appellants,
v.
Janet RENO, Attotney General; Doris M. Meissner,
Commissioner of the U.S. Immigration and Naturalization
Service; Immigration and Naturalization Service; United
States of America, Defendants-Appellees.
 No. 96-35530.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 7, 1997.
Decided Jan. 9, 1998.
 
 1
 Before: FLETCHER and O'SCANNLAIN, Circuit Judges, and SCHWARZER,** Senior District Judge.
 
 
 2
 MEMORANDUM*
 
 
 3
 Arctic Ice Cream Novelties ("Arctic") and William Dinsmore ("Dinsmore") appeal from the district court's summary judgment rejecting their challenge of the Immigration and Naturalization Service's ("INS") denial of their application for an employment-based preference visa for Dinsmore under 8 U.S.C. §§ 1153(b)(2)(A) and 1153(b)(2)(B). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 4
 Arctic contends that the INS erred in two respects: first, in ruling that Dinsmore does not qualify as an alien of exceptional ability, and, second, in failing to find that his employment would be in the national interest. We review a summary judgment de novo using the same standard as the district court which, in the case of a denial of an immigrant visa, is for abuse of discretion. § U.S.C. § 706(2)(A); Asuncion v. District Dir., INS, 427 F.2d 523, 524 (9th Cir.1970).
 
 
 5
 I. Qualification as an Alien of Exceptional Ability
 
 
 6
 Arctic contends the INS abused its discretion by applying the wrong legal standard in ruling that Arctic's documentation on Dinsmore did not satisfy the requirements of any of subparts D, E, and F of the INS regulations (at least two of which it would have to satisfy).[3] These subparts provide:
 
 
 7
 (D) Evidence that the alien has commanded a salary, or other remuneration for services, which demonstrates exceptional ability;
 
 
 8
 (E) Evidence of membership in professional associations; or
 
 
 9
 (F) Evidence of recognition for achievements and significant contributions to the industry or field by peers, governmental entities, or professional or business organizations.
 
 
 10
 8 C.F.R. § 204.5(k)(3)(ii). If the preceding categories "do not readily apply to the beneficiary's occupation, the petitioner may submit comparable evidence to establish the beneficiary's eligibility." 8 C.F.R. § 204.5(k)(3)(iii).
 
 
 11
 Salary. The INS found that Dinsmore's salary of $75,000 a year accompanied by a 20 percent stock option (unvalued) spread over four years has not been shown to be an above average salary for a managing director and thus does not "demonstrate[ ] exceptional ability in business," as required by subpart D. Arctic conceded in the district court that "reasonable minds might differ" on whether its compensation evidence establishes exceptional ability, an admission that is fatal on abuse of discretion review. Arctic's conclusory assertion that Dinsmore's salary "meets the INS's criteria of commanding a salary demonstrating exceptional ability" does not explain why the INS's finding was arbitrary and capricious or an abuse of discretion.
 
 
 12
 Membership in Professional Organizations. Arctic submitted evidence that Dinsmore was a member and officer of a number of dairy industry associations. It concedes that none is a "professional association" but argues that the dairy industry does not have any professional organizations. The INS concluded the evidence did not satisfy subpart E or section 204.5(k)(3)(iii) as comparable evidence because "the record does not include evidence of membership requirements or other information which would lead to the conclusion that these associations require of their members a degree of expertise significantly above that ordinarily required." The INS's construction of its own regulations is entitled to substantial deference. Lyng v. Payne, 476 U.S. 926, 939 (1986). It cannot be said that the INS erred in interpreting subpart E to refer to organizations that require their members to have above-average expertise in their field.
 
 
 13
 Recognition for Achievements and Significant Contributions. The INS determined that the letters submitted by Arctic from Dinsmore's colleagues, various governmental officials, and a U.S. senator do not satisfy the requirements of subpart F because "the letters do not give a detailed description of [Dinsmore's] accomplishments and significant contributions." Arctic does not directly contest this determination on appeal. Moreover we cannot say that the INS was unreasonable in interpreting the term "recognition" in its regulations as referring to specific accomplishments and contributions, rather than general success. While most of the letters contained glowing reviews of Dinsmore, none spoke in specific terms of his contributions or achievements.
 
 
 14
 Comparable Evidence. Arctic contends that because business success cannot be measured in terms of academic degrees or licenses, this is a case in which comparable factors must be considered. It has not shown, however, that the criteria applied to Dinsmore under the INS regulations--salary, membership in professional organizations, and recognition for achievements--are not relevant to the determination of whether he qualifies as an alien of exceptional ability.
 
 
 15
 In sum, the INS did not abuse its discretion in finding that Dinsmore did not qualify as an alien of exceptional ability.
 
 II. Waiver of Labor Certification
 
 16
 The INS interpreted "national interest" in section 1153(b)(2)(B), authorizing waiver of the job offer requirement, as requiring "a showing significantly above that necessary to prove the 'prospective national benefit' required of all aliens seeking to qualify as 'exceptional.' " It found that the "evidence submitted does not establish [Dinsmore as] having more than an extremely limited effect on the economy or welfare of the United States."
 
 
 17
 Arctic argues that the INS's narrow interpretation of national interest is contrary to the intent of Congress and ignores evidence that Dinsmore's employment would create jobs and improve working conditions and would make as great a contribution as that of immigrants admitted under other provisions of the law. Because "national interest" is a general term of no precise meaning and Congress has expressed no specific intent with respect to its meaning, we must defer to the INS's interpretation so long as it is not arbitrary or capricious. See Chevron USA, Inc. v. National Resources Defense Council, 467 U.S. 837, 842-43 & n. 9 (1994). We cannot say that it is.
 
 
 18
 Arctic also argues that in prior decisions, the INS has articulated relevant factors similar to those on which Arctic relies here. But the fact that the INS has relied on similar factors does not establish that it has applied them in an inconsistent manner. The INS's decision turns on the sufficiency of the evidence and in this case it found that the evidence was insufficient to show that Dinsmore's employment would have anything more than an "extremely limited effect." Nothing in the record would support a conclusion that the INS abused its discretion.
 
 
 19
 The judgment is AFFIRMED.
 
 
 
 **
 Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [3]
 For purposes of this disposition we need not consider the other subparts